Jane **KARANDA**

v.

**CONNECTICUT GENERAL LIFE INSURANCE CO., et al.**

**No. 3:99CV243(JBA).**

United States District Court, D. Connecticut.

Sept. 29, 2000.

Barbara E. Gardner, Manchester, CT, for plaintiff.

Albert Zakarian, Victoria Woodin Chavey, Elizabeth Ann Alquist, Suzanne Garrow, Day, Berry & Howard, Hartford, CT, for defendants.

---

**1.** The following facts are taken from the defendants' Rule 9(c)(1) Statement of Undisputed Facts, plaintiff's Rule 9(c)(2) Statement, and the claims record submitted by both sides

*RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DOC. # 20]*

ARTERTON, District Judge.

## I. INTRODUCTION

In this action, plaintiff, Jane Karanda, alleges that defendants improperly denied her claim for short term disability benefits in violation of the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Defendants now move for summary judgment on the grounds that the decision to deny plaintiff's claim was not arbitrary and capricious. For the reasons stated below, Defendants' Motion for Summary Judgment [doc. # 20] is DENIED.

## II. FACTUAL BACKGROUND [1]

Viewing the facts in the light most favorable to the non-moving party, in 1974, plaintiff began working for Pratt & Whitney, a division of defendant United Technologies Corporation, as a pipe welder. *See* Pl.'s Oppn. at 1; Def.'s Mem. in Support at 2. Pratt & Whitney employees are covered by its Disability Benefits Plan (the Plan) and are provided with a Summary Plan Description (SPD). The weekly short-term disability benefits, for which plaintiff applied, are self-insured and administered by defendant Connecticut General Life Insurance Co. (CIGNA). *See* Def.'s Ex. D at 39–40. The Plan provides that "[i]f an Employee, while covered under this plan, becomes Totally Disabled because of an accidental injury, an illness, or a pregnancy, the plan will pay the Employee Weekly Disability Income while the Employee remains continuously Totally

in connection with this motion for summary judgment. Additional factual findings are discussed in Section IV, *infra.*

Disabled ..." Def.'s Ex. D at 10. As defined by the Plan, "[a]n Employee will be considered Totally Disabled if, for medical reasons, he/she is unable to perform the regular duties of his/her employment (or the duties of any other suitable alternative employment offered by the Employer) because of an injury, illness or pregnancy." *Id.* at 5.

In February 1998, plaintiff began suffering from a mental condition for which her treating physician, Dr. Mullaney, a general practitioner, prescribed the antidepressant Paxil and recommended she see a counselor. *See* Pl.'s Oppn. at 1. One month later, plaintiff began seeing a clinical social worker, Paul Simoni, for psychological counseling. *See id.;* Def.'s Mem. in Support at 2.

On April 8, 1998, plaintiff was involved in a verbal dispute with a co-worker in which her life was threatened and which, according to plaintiff, triggered a more severe depression. *See* Pl.'s Oppn. at 2. Plaintiff stopped working on April 15, 1998, the date her disability was certified by Dr. Mullaney, *see* Def.'s Ex. E., and applied for short-term disability benefits on May 10. On the application form, she stated that her illness was "stress related," due to a physical threat by her co-worker. *See* Def.'s Ex. C (UTC/CG0083). Dr. Mullaney submitted the physician's section of the form, diagnosing Karanda with depression and stating that her symptoms were "tearful[ness], insomnia, and diarrhea." The form called for an indefinite return to work date. *See* Def.'s Ex. E.

According to the defendants, it is the usual practice to automatically grant a claimant short-term disability benefits

through the date certified by his or her physician, pending further medical documentation. *See* Def.'s Mem. in Support at 5. To that end, plaintiff received a letter from Roshaa Payne, Case Manager, on June 8, informing her that her disability benefits were approved from April 21, 1998 through May 21, 1998, the date on which Dr. Mullaney filled out the disability form described above. The letter further advised that Dr. Mullaney must complete another form if she wished to receive benefits beyond that period.[2] *See* Def.'s Ex. C (UTC/CG0098–0099).

In response, on June 16, Dr. Mullaney submitted the claim form extending plaintiff's period of disability until September 1, 1998, but did not complete the section asking for certain information on mental impairment. *See* Def.'s Ex. G. CIGNA's telephone records indicate that Payne spoke with plaintiff on June 29 to inquire as to why Mullaney extended her disability until September, and that plaintiff responded that she may have to stay out of work that long because neither she nor her co-worker could be transferred; plaintiff also indicated that she was currently not ready to return to work. *See* Def.'s Ex. C (UTC/CG0088). Plaintiff does not appear to dispute that this conversation occurred. *See* Pl.'s 9(c)2 Statement ¶ 9. Two days later, Payne spoke to Vivian Chow, a Pratt & Whitney human resources representative, who stated that plaintiff had merely had a verbal run-in with a co-worker and that her work environment was safe. *See* Def.'s Ex. C (UTC/CG0091).

Defendants' phone records describe a conversation between Payne and Dr. Mullaney, on July 1, 1998, in which Mullaney

---

2. Although the defendants claim that the letter requested "additional medical documentation," the letter in fact simply states "[f]or consideration of benefits beyond this date, we will require the enclosed form be completed by your attending physician and return it to our office as soon as possible." Def.'s Ex. C (UTC/CG0098–0099). As discussed below, Mullaney returned the form.

allegedly stated that if plaintiff's work area was safe, and Ms. Karanda believed she were capable of returning to work, he would not object to her returning to work. *See* Def.'s Ex. C (UTC/CG0092).[3] That same day, CIGNA's records reflect another conversation between Payne and the plaintiff in which plaintiff stated that she had been informed that her co-worker had not been transferred and also that she was not ready to return to work, although the record does not indicate any causal relationship between these two statements. *See* Def.'s Ex. C (UTC/CG0093). Again, plaintiff does not appear to dispute the occurrence of this conversation. Payne then talked to Andy Gaither, her "team leader," who advised that she deny the claim "due to lack of medical info[rmation]." Def.'s Ex. C (UTC/CG0091).

Plaintiff received a letter from Payne dated July 2, 1998, advising her that "no additional benefits were due at this time." Def.'s Ex. C (UTC/CG0100–0101). The letter explained that CIGNA had concluded that the problem was resolved because Dr. Mullaney had told CIGNA that Karanda could return to work if it were safe for her to do so, and Pratt & Whitney had informed CIGNA that the workplace was "not a threat in any way to you nor to your coworker." *See id.* It also invited her to appeal the decision and provide "documentation (medical records, physician's statement) that [she] fe[lt] support[ed] the claim." *Id.* Plaintiff's attorney sent an appeal letter on July 15, 1998 but no further documentation was provided at that time.

Andy Gaither responded to the appeal with a letter dated July 22, affirming the original denial of benefits. *See* Def.'s Ex. C (UTC/CG0106). The letter declared

that CIGNA required proof "that a medical condition render[ed] her unable and limit[ed] her from being able to perform her job as it is normally performed with another employer." *Id.* CIGNA concluded that because Dr. Mullaney had indicated that she could return to work if her co-worker had been transferred and did not mention any other medical restrictions on her ability to work, "[t]he issue of the alleged hostile individual and his location of work in relation to Ms. Karanda is an employment issue and not a disability issue as she has the ability to perform the job she was performing when she ceased work." *Id.* Plaintiff was again invited to appeal and to submit additional medical information.

In response, plaintiff submitted a letter from Dr. Mullaney, stating that she was unable to work due to severe depression, and a letter from Simoni that diagnosed plaintiff with dysthymia (DSM–IV–R 300.40) and asserted that she could not function at work. Additionally, plaintiff provided office notes from Mullaney and treatment summaries from Simoni describing, *inter alia,* symptoms, diagnoses and medication types and dosages. *See* Def.'s Ex. C (UTC/CG0111–0129, 0135–0143). CIGNA then requested and received additional information from Simoni.

After receiving this additional medical information, CIGNA forwarded Karanda's file to Diana Morgan, a registered nurse, for review. Morgan concluded that based on her review of the file, the medical information "support[ed] that this is a[n] employee-employer problem," i.e. that plaintiff was reluctant to work because of her dispute with her co-worker rather than because of a medical disability. Def.'s Ex. C (UTC/CG0157). Accordingly, plaintiff

---

**3.** Although at his deposition, Dr. Mullaney denied speaking with Payne, *see* Pl.'s Ex. A at 70–71, as discussed below, the Court considers plaintiff's failure to raise this issue during the appeals process to preclude the argument now.

received a final letter from Gaither dated November 25, 1998 reconfirming the denial of benefits. *See* Def.'s Ex. C (UTC/CG0147). Karanda then initiated the action presently before this Court, challenging the denial of her short-term disability benefits as arbitrary and capricious.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment may be granted when "there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law." In general, "all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Tomka v. Seiler*, 66 F.3d 1295, 1304 (2d Cir.1995).

## IV. DISCUSSION

■ The parties agree that the denial of benefits in this case is to be reviewed under the "arbitrary and capricious" standard. Where a benefit plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," challenges to a denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B) are reviewed under this standard. *Firestone Tire & Rubber, Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In the present case, the summary plan

description provides that "the Plan Administrator has the right to interpret the terms and provisions of the plan. The Plan Administrator's decision is conclusive and binding." Def.'s Ex. D at 19.

■ Under the arbitrary and capricious standard, the plan administrator's decision to deny benefits will only be overturned if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995). In making this determination, courts must consider "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Moriarity v. United Technologies Corp. Represented Employees Retirement Plan*, 947 F.Supp. 43, 50 (D.Conn.1996) (*quoting Jordan v. Retirement Comm. Rensselaer Poly.*, 46 F.3d 1264, 1271 (2d Cir.1995)). Because this scope of review is narrow, this Court may not substitute its own judgment for that of the administrator as if it were considering the issue of eligibility anew. Instead, the Court is "effectively functioning in an appellate capacity and must limit its review to the evidence that was in the administrative record available to the plan administrator." *Durr v. Metropolitan Life Ins. Co.*, 15 F.Supp.2d 205, 209 (D.Conn.1998); *see also Crocco v. Xerox Corp.*, 956 F.Supp. 129, 138 (D.Conn. 1997).

### A. The Basis for CIGNA's Decision To Deny Benefits

■ According to the November 25, 1998 final denial letter,[4] CIGNA denied

---

4. Although CIGNA now argues that it denied Karanda disability benefits because she "failed to provide sufficient medical evidence to show that she was disabled," *see* Doc. # 21 at p. 20, as discussed below, the November 25, 1998 denial letter nowhere states that this

was the reason for the denial. Because this Court's review is limited to the evidence in the administrative record, it must determine whether CIGNA's denial was arbitrary and capricious based on the reasons CIGNA gave at the time for the denial. *See Short v. Central*

Karanda's claim for disability benefits because it concluded that: (1) Dr. Mullaney's statement in June 1998 that she could return to work if it was safe indicated that Karanda's problem "appears to be a work-related issue and not a medically disabling condition," (2) Simoni failed to explain the alleged discrepancy between her suffering from depression in the past and becoming disabled by depression in April 1998 after the altercation with her co-worker, and stated that he had no comment at this time in response to CIGNA's question asking what changes would be required for the patient to perform her regular occupation or any occupation, and (3) their medical consultant, Diana Morgan, had concluded that Simoni and Mullaney's notes and information from the record "appears to support that this is an employee-employer issue, and does not support that her inability to work is related to a medically disabling condition at the time she went out." Defendant.'s Ex. C (UTC/CG0147–0148).

■ Karanda argues that CIGNA's denial focused improperly on the cause of her disability, in particular the death threat from her co-worker in April 1998, and concluded that her inability to return to work was because of an employee-employer issue and not a medical disability, despite the fact that the Plan contains no exclusion for medical disabilities caused by work-related problems. She asserts that CIGNA's reliance on this irrelevant factor renders its decision arbitrary and capricious. In addition, plaintiff argues that the uncontroverted medical evidence was sufficient to support her claim of disability due to depression and dysthemia. She also claims a dispute of fact exists regarding whether Dr. Mullaney ever spoke with CIGNA about Karanda's ability to return to work.[5] Finally, she claims that CIGNA's phone contacts with Pratt and Whitney are evidence of a conflict of interest, and that the existence of such a conflict and its effect preclude summary judgment.

The defendants argue that summary judgment is appropriate because there is substantial evidence in plaintiff's disability file to support a determination that she was not disabled within the meaning of the Plan. See Def.'s Motion at 19. Under the Plan, "[a]n employee will be considered Totally Disabled if, for medical reasons, he/she is unable to perform the regular duties of his/her employment (or the duties of any other suitable alternative employment offered by the Employer) because of an injury, illness, or pregnancy." Def.'s Ex. D at 5.

States, Southeast & Southwest Areas Pension Fund, 729 F.2d 567, 575 (8th Cir.1984) ("A post hoc attempt to furnish a rationale for a denial of pension benefits in order to avoid reversal on appeal, and thus meaningful review, diminishes the integrity of the Fund and its administrators.").

5. CIGNA's decision relied heavily on its alleged conversation with Dr. Mullaney in which he stated that plaintiff could return to work if the work area was made safe. See Def.'s Ex. C (UTC/CG0147). Plaintiff argues that because Dr. Mullaney later denied that he had such a conversation with CIGNA, see Mullaney dep., Pl.'s Ex. A at 70–71, the disputed issue of fact regarding the existence of the conversation raises a triable issue as to whether the denial was arbitrary and capricious. As noted above, however, this Court's review is limited to the record before the plan administrator at the time of its decision. There is ample evidence here that Karanda and her attorney both knew that CIGNA claimed to have spoken to Dr. Mullaney about her ability to return to work, and it is undisputed that they failed to question the accuracy of that statement until well after CIGNA reached its final decision. Under these circumstances, CIGNA's reliance on its record of the conversation with Dr. Mullaney is assumed reasonable, but this Court finds that the issue of fact regarding the existence of this conversation now raised by Karanda's counsel is immaterial.

■ Whether there was substantial evidence in the record *vel non* to support a denial is not actually at issue because, as discussed below, the exclusive focus in all of CIGNA's denial letters was whether Karanda's inability to return to work arose from an employer-employee dispute. Thus, the Court is persuaded from the record before it that CIGNA relied on an impermissible causation factor in determining why plaintiff was unable to return to work, and that the lack of objective medical evidence was not, in fact, a basis for the denial.

### B. CIGNA's Focus on the Employer–Employee Dispute

All three of the denial letters sent by CIGNA state that Karanda's disability benefits are denied because Dr. Mullaney first failed to indicate the reason for her inability to work on the form provided by CIGNA, and then informed CIGNA during a telephone call in June 1998 that Karanda could return to work if the work environment was safe but did not mention any other medical restrictions on her ability to work at that time. From this evidence, CIGNA reached various conclusions, all of which demonstrate its improper consideration of the cause of the claimed disability in rejecting Karanda's short-term benefits claim.

First, on July 2, 1998, CIGNA concluded that the problem was resolved, based on a statement from Pratt & Whitney HR personnel that the work environment is "not a threat in any way to you nor to your coworker," and Mullaney's statement that plaintiff could return to work if the environment was safe. In concluding that Mullaney had not indicated the basis for extending disability benefits, CIGNA apparently ignored the Attending Physician's Statement of Disability form submitted by Dr. Mullaney on June 16, 1998, which,

while incomplete with respect to the mental impairment section, unambiguously stated that the diagnosis is depression/anxiety; that the date she became disabled due to this illness was April 15, 1998; that her symptoms were "insomnia, tearful, jittery," and that she is incapable of returning to any occupation before September 1, 1998. Pl.'s Ex. F (M042–43). This is the same diagnosis that Mullaney included on the initial claim form submitted on May 21, 1998, which also indicated that the limitations preventing Karanda from returning to work are "tearful, stress, fear," and that the date she became disabled due to these limitations was April 15, 1998. Pl.'s Ex. E (M035). Given this evidence, CIGNA's contention that Mullaney failed to indicate the reasons for the extension of benefits through September 1, 1998 is strained, at best.

Karanda appealed, and CIGNA concluded on July 22, 1998 that "we have not been provided with a medical reason that Ms. Karanda is unable to perform her job as it is normally performed. The issue of the alleged hostile individual and his location of work in relation to Ms. Karanda is an employment issue and not a disability issue as she has the ability to perform the job she was performing when she ceased work." Def.'s Ex. C (UTC/CG0106).

After Karanda received this denial letter, she submitted additional medical information from her treating doctor and her therapist. Dr. Mullaney's letter of September 15, 1998 states clearly that Karanda "has been suffering from severe depression since early 1998. She is not eating or sleeping well. She is tearful as well as fearful. She is incapacitated completely as far as her ability to perform regular duties of daily life, as well as those of her occupation." Def.'s Ex. C (UTC/CG0111). Mr. Simoni's September 2, 1998 letter indicates that he has been treating Ms. Karanda in

psychotherapy since March 23, 1998, that her diagnosis is dysthemia, that she is currently taking Zoloft, with little effect, and that he currently judges "the patient to be unable to function at work, she is minimally functional at home." Def.'s Ex. C (UTC/CG0112).

At CIGNA's request, Karanda also sent office notes from Mullaney for the relevant time period, which included descriptions of her symptoms, treatment dates, and medication types and dosages, *see* Def.'s Ex. C (UTC/CG0115–0119), and Simoni's notes going back to March 1998, which included an Axis description of his DSM–IV diagnosis and plaintiff's symptoms. Simoni's notes from April 13, 1998 indicate that "patient reports experiencing both depression and anxiety" and indicates that the severity of her functional impairment at work is level 3, the highest level. A later record indicates that "patient is continuing to experience symptoms of depression and anxiety and is unable to function at work," and also rates her functional impairment at work as level 3, noting that she is "unable to function in employment." Finally, yet another record indicates that she remains at a level 3 impairment and "continues to experience increased depressive symptoms," and that "patient is not working—due to anxiety due to discrimination and threats." *See* Def.'s Ex. C (UTC/CG0135–0143). In the cover letter accompanying these notes dated October 26, 1998, Simoni stated that "her condition has worsened due to her employment situation," and that in his judgment, she "cannot currently maintain employment." *See* Def.'s Ex. C (UTC/CG0135).

In response to questions from CIGNA, Simoni stated on November 11, 1998 that the clinical problems that prevent Karanda from performing her regular occupation are that "she is depressed, she has attempted work, but cannot due to anxiety, crying and papatations [sic]" and that the problem preventing her from performing her occupation for another employer is that "she is depressed." *See* Def.'s Ex. C (UTC/CG0132–0134).

Despite these submissions, CIGNA's November 25, 1998 letter denying plaintiff's final appeal simply repeated the now common theme that:

> On May 21, 1998, John Mullaney, M.D., states her disabling diagnosis as depression beginning April 15, 1998. We provided benefits from April 21, 1998 through May 21, 1998. Dr. Mullaney then extended the disability through September 1, 1998 but did not provide the specific reason for the extension nor provide medical documentation of her restrictions that prevented her from working. When Dr. Mullaney was contacted directly by telephone, he advised that the employee may return to work at any time. Although you state that in the employee's opinion, the work area is not safe, this appears to be a work-related issue and not a medically disabling condition.

Def.'s Ex. C (UTC/CG0147). CIGNA also states that:

> We also contacted Paul Simoni, LCSW, for a narrative report regarding the employee's current treatment. In Mr. Simoni's narrative dated November 11, 1998, he states that his diagnosis is dysthymia, not major depression, as she has suffered from depressive symptoms for at least two years. However, this condition did not prevent her from performing the duties of her occupation until an alleged threat from her coworker in approximately April 1998. To our question which states "Please explain the discrepancy between the patient's previously being able to function adequately on the job and now being totally disabled," Mr. Simoni responded, "I am not licensed nor experienced to judge her degree of

disability, nor have I indicated that this is the case." Also to our question which states, "What changes are required for the patient to perform her regular occupation or any occupation?" Mr. Simoni states "I have no comment at this time." He ends his narrative by stating "Lastly, I am not a doctor, I am a Licensed Clinical Social Worker."

Finally, CIGNA's letter indicates that:

Mr. Simoni's office notes and medical records from Dr. Mullaney were reviewed by our medical consultant. Dr. Mullaney's records indicate that the employee was taking prescribed medication as of February 1998 but stopped taking the medication in July 1998. Records dated April 27 state that the employee was oriented to person, place, and time, her thought processes were clear, she exhibits good short and long term memory, and her judgment appeared good. Records also indicate that the employee would come back to work if the co-worker who threatened her was moved to another department. This information appears to support that this is an employee-employer issue, and does not support that her inability to work is related to a medically disabling condition at the time she went out.

*Id.*

While quoting selectively from Simoni's November response, nothing in CIGNA's denial letter or the medical consultant's review indicates that CIGNA or Nurse Morgan ever considered the fact that Simoni quite clearly responded to CIGNA's inquiry as to why Karanda could not return to work, indicating that her depression prevented her return. Instead, they fault Simoni for his failure to explain the perceived discrepancy between her ability to work previously while suffering from depression, and the fact that after the threats from her co-worker, she became unable to work. However, the denial letter ignores the fact that both Mullaney's and Simoni's notes indicate that the triggering event for the now-disabling level of depression for which she sought treatment and disability benefits was the threatening incident with her co-worker, and that therefore there is no discrepancy to be explained. CIGNA's other complaints about Simoni's response are equally without merit.[6]

Similarly, Nurse Morgan's Case Plan submitted to CIGNA after her review of the medical file cites very selectively from the extensive medical documentation eventually provided by Ms. Karanda, but fails to even consider, let alone distinguish, the numerous statements indicating that she is disabled by depression, is suffering from dysthemia, and that both her treating physician and her therapist clearly considered

---

**6.** Perhaps Simoni meant, as plaintiff suggests, that he had not diagnosed her as "totally" disabled but rather only temporarily disabled; perhaps he meant that he had not indicated that he is licensed or qualified to judge the degree of her total disability; or perhaps he meant, as CIGNA apparently suggests, that he had not indicated that she was medically disabled at all. The remainder of his letter, however, clearly states that she is prevented from returning to her regular occupation with any other employer due to depression and that the clinical problem preventing her return to work is depression. Therefore, this Court finds that the ambiguous reference to qualifications does not supplant the unambiguous medical evidence supporting Karanda's claim of disability due to depression.

With respect to Simoni's concluding statement: "Lastly, I am not a doctor, I am a Licensed Clinical Social Worker," given that CIGNA's letter, to which Simoni responded paragraph by paragraph, addressed him as "Dr. Simoni," this Court believes that the concluding sentence was not intended as a declaration of his lack of qualifications, as CIGNA apparently seeks to imply, but simply a correction in title.

her unable to return to work because of depression continually over the course of the period for which Karanda claims disability. Morgan notes that "the issue of what was preventing the [claimant] from working at the time that the [claimant] went out on disability was the employee who threatened her. Mr. Simoni's records as of 4/27/98 indicates the presenting problem was '[t]hey are not fair at work, they are discriminating.'" UTC/CG0157. However, Morgan again fails to address the fact that both Simoni and Mullaney indicated that the incident with the co-worker and Karanda's other problems at work were the cause of a medical condition, depression, that made Karanda unable to return to work.[7]

The evidence cited by Morgan in her review and by CIGNA in the denial letter was deemed by Morgan "to support that this is an employer-employee issue," without any attention to whether this employer-employee issue had caused a disabling mental condition. In the denial letter, CIGNA repeats this conclusion, and adds that this evidence "does not support that her inability to work is related to a medically disabling condition at the time she went out." CIGNA's conclusion ignores the extensive and uncontroverted contrary medical evidence, and never considers it in terms of its sufficiency to support a claim of medical disability, no matter what the cause.

■ The denial letter demonstrates that despite Karanda's compliance with CIGNA's requests for additional medical information, CIGNA persisted in viewing the record, including her physician's and therapist's notes, through an "employer-employee dispute prism," apparently failing

to consider that her diagnosed medical disability—severe depression—while *caused* by a dispute with her co-worker and dissatisfaction with her employer's response, was nonetheless a covered disability. Where the plan administrators "impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." *O'Shea v. First Manhattan Co. Thrift Plan and Trust*, 55 F.3d 109, 112 (2d Cir.1995). Because the Plan contains no exclusion for disabilities that have work-related causes, CIGNA's determination was based on an improper factor, rendering its denial of benefits arbitrary and capricious. *See Jordan v. Retirement Comm. Rensselaer Poly.*, 46 F.3d 1264, 1271 (2d Cir.1995).

## C. The lack of objective medical evidence

■ Plaintiff claims that CIGNA's conclusion that the Plan requires objective medical evidence of disability is arbitrary and capricious since the Summary Plan Description does not "clearly require the presentation of objective data." ERISA requires that a summary plan description of employee benefit plans be distributed to apprise employees of their rights and obligations under the plan. *See* 29 U.S.C. § 1022. The statute contemplates that the plan summary be the employees' primary source of information on which they are entitled to rely. Thus, when the terms of the Plan conflict with those of the plan summary, the plan summary controls. *See Heidgerd v. Olin Corp.*, 906 F.2d 903, 909

---

7. Morgan's conclusion provides further evidence of CIGNA's improper focus on the employer-employee issue, to the exclusion of the proper inquiry here: whether Ms. Karanda's

medical evidence supported her physician's and therapist's conclusions that she was suffering from severe depression and therefore unable to return to work.

(2d Cir.1990). Allowing an inconsistent plan to control over the summary would thwart that objective. *See id.* at 908–09. However, as other circuits have explicitly stated, because the description is a summary, by definition it need not include every detail contained in the Plan. *See Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 401 (6th Cir.1998) (an omission from the summary plan description does not alter the terms of the plan); *Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan,* 144 F.3d 1014, 1023–24 (7th Cir.1998) (the plan may provide clarification not provided in the summary plan description); *Martin v. Blue Cross & Blue Shield of Va., Inc.,* 115 F.3d 1201, 1205 (4th Cir.1997).

In the present case, the terms of the Plan and the summary description are not contradictory. The Plan provides that "the [e]mployee's Physician will be required to present objective data to support the [e]mployee's disability." *See* Def.'s Ex. D at 10. While the summary plan does not report this requirement, it states that "the insurance company has the right to request proof of [the insured's] condition from [insured's] physician at any time[.]" Pl.'s Ex. D at 35. Defendants argue that the Plan merely clarifies the kind of evidence that will be required to process disability claims. *See* Def.'s Reply at 3. Under the deferential standard of review accorded the administrator's interpretation of the terms of the Plan, the Court concludes that this interpretation is reasonable.

■ In addition, even if there are circumstances under which these two statements could be found to conflict, the plaintiff does not claim that she relied on the SPD to her detriment, and therefore, was not injured by any such discrepancy. *See Moriarity,* 947 F.Supp. at 52 ("the plaintiff is entitled to recover only if he can establish that he lost his disability benefits as a result of his reliance on the deficiencies in the summary plan description"). Instead, she was encouraged to submit objective evidence for consideration on appeal and did so. For these reasons, the Court concludes that the language of the Plan, requiring objective evidence, controls.

■ However, CIGNA's decision to deny benefits was not, contrary to the suggestion made at oral argument, based on a lack of objective medical evidence of disability. Instead, as discussed above, CIGNA's claims reviewers appear to have been so focused on the employer-employee dispute issue that they did not consider the adequacy of her objective evidence of a medical disability, from whatever cause, to support her claimed inability to return to work because of depression and/or dysthemia. While the medical consultant apparently was asked whether the medical information supported Simoni's opinion of disability, *see* UTC/CG0157, the case plan submitted by Morgan to CIGNA does not conclude that the medical evidence provided by Karanda's doctor and therapist was insufficient to support her disability claim, but rather that her inability to work appears to be based on an employee-employer problem. CIGNA's conclusion in the denial letter that the select information they point to "appears to support that this is an employee-employer issue, and does not support that [Karanda's] inability to work is related to a medically disabling condition at the time she went out" cannot reasonably be construed as a conclusion that the entire medical record failed to provide sufficient objective evidence of medical disability.

■ However, even assuming that CIGNA had denied Karanda benefits on the grounds of lack of objective medical evidence, it is far from clear what additional "objective" information CIGNA could

have required, particularly in the absence of any contrary medical information indicating that Karanda was not suffering from disabling depression. The reported statement of Karanda's physician that she could return to work if it were safe, a conversation on which CIGNA places great weight and that is cited in every CIGNA denial letter, omits a significant detail when summarized by defendants in those letters. The CIGNA notes state that on July 1, 1998, Roshaa Payne called Dr. Mullaney to "verify why [claimant] is unable to [return to work] until 9/1/98 if her work area is problem-free." Mullaney allegedly stated that "he hasn't heard about the area being clear of the individual that was threatening to kill [claimant]. If it's not clear he would not advise her to go back, but if it is clear *and if claimant thinks she could go back* then he's ok with that." Def.'s Ex. C [UTC/CG0092] (emphasis added). Thus, rather than a ringing endorsement of Karanda's ability to work but for her dispute with her co-worker, Mullaney's alleged statement of her ability to work is clearly qualified by Karanda's mental status.

CIGNA's motion for summary judgment also claims as evidence of plaintiff's non-disabled condition Karanda's statement to Roshaa Payne that she would work if she or her co-worker were transferred, and that she sought accommodation from her employer. Records of conversations between Payne and Karanda on June 29 and July 1, 1998 indicate that Karanda stated that she is in therapy, that the increased "severity of her problem had gotten her disabled," that she may need to stay out of work until September 1, 1998 because she doesn't believe the employer will transfer either her or her co-worker, and that she's not ready to return to work. The second conversation, which occurred after Payne

spoke with Mullaney, indicates that Karanda "doesn't feel she is ready to [return to work]. She said she [sic] even seeing a therapist." Def.'s Ex. C [UTC/CG0088, 0093]. Although not entirely clear, this indicates that Karanda connected her inability to work with her seeking therapy for depression, which was, as noted above, exacerbated by the threats from her co-worker. This is consistent with the claim forms she and her physician completed, all indicating that the basis for her disability claim is her depression.

■ Although the burden lies on the claimant to provide proof of disability, speculation or assumption on the part of the administrator is insufficient to overcome a conflicting medical opinion. *See Miller v. United Welfare Fund,* 72 F.3d 1066, 1073 (2d Cir.1995); *Catania v. NYSA–ILA Severance Benefit Fund,* No. 91 Civ. 3262, 1992 WL 176502 **7–8, 1992 U.S. Dist. LEXIS 10985, at *24–25 (S.D.N.Y. July, 15, 1992) (defendants' denial of benefits based on a speculative analogy between plaintiff longshoreman's seagoing experience and that of two of defendant's trustees, in the face of contrary medical opinion, was arbitrary and capricious) (*cited in Miller,* 72 F.3d at 1073).

■ In the context of Social Security Act cases, a treating physician's opinion is generally given deference over a non-treating physician's opinion. *See Durr v. Metropolitan Life Ins. Co.,* 15 F.Supp.2d 205, 213 (D.Conn.1998), the standards developed in Social Security Act are instructive, although not binding, in ERISA cases. *See Durr,* 15 F.Supp.2d at 213 n. 2 (citing cases). If the treating physician's opinion is not given controlling weight, it may in certain circumstances be given substantial weight.[8]

---

8. In determining whether to give a treating

physician's opinion substantial weight over a

In the present case, plaintiff's treating physician, Dr. Mullaney, stated that plaintiff was unable to perform her job due to a disabling mental condition. He submitted a disability claim form for additional benefits which stated that plaintiff was unable to work as of April 15, 1998. It included his ECD–9 diagnosis, anxiety and depression (311.0/300.00), as well as her subjective symptoms, medication type and dosage, and a statement that she was in therapy. *See* Def.'s Ex. C (UTC/CG0084); Pl.'s Ex. A at 65. As noted above, Mr. Simoni, the treating therapist, provided detailed office notes, and concluded repeatedly that she was unable to return to work due to depression.

The November 1998 review by Nurse Morgan, whose psychiatric training is unknown, was the only medical assessment made by CIGNA of plaintiff's claim. Her file was not reviewed by a physician or psychologist and she was never requested to submit to an independent psychiatric examination. In *Miller*, the defendant determined, without any outside medical consultation, that the private duty nursing care engaged by plaintiff was not medically necessary, and therefore, not covered under the benefits plan. *See* 72 F.3d 1066. This conclusion was based on a review of the nursing notes by defendant's employees, the absence of explicit language in the treating physician's letter stating a "medical necessity" for private nurses, and the good reputation of New York Hospital's own nursing staff. *Id.* at 1072–73. The Second Circuit reasoned that this evidence was insufficient to override a letter by the treating physician stating that he had recommended private nursing care and as such, defendant's decision to deny plaintiff's claims for reimbursement of the costs of that care was arbitrary and capricious. *Id.* at 1073.

Here, CIGNA, rather than its nurse consultant, made the determination that the cited medical evidence did not support the plaintiff's claim that her inability to work in April 1998 was the result of a disabling medical condition. Morgan's claim review concludes that the evidence "appears to support that this is an employee-employer issue," but does not address whether Karanda had submitted adequate medical evidence of disability. CIGNA's denial letter, however, continues that sentence, adding "and does not support that her inability to work is related to a medically disabling condition at the time she went out." Given the record of repeated conclusions by her physician and therapist that she was medically disabled from working because of depression, and in the absence of any contradictory medical conclusion to the effect that she was able to return to work but for her unwillingness to work near her co-worker, there is no substantial medical evidence supporting the denial of benefits. However, plaintiff has not filed a cross-motion for summary judgment on this basis. Therefore, inasmuch as there appear to be no material facts shown to be in dispute, but defendant is not entitled to summary judgment and its Motion for Summary Judgment [doc. # 20] is DENIED, the Court directs that the defendant show cause by October 13, 2000 why summary judgment should not be granted *sua sponte* in plaintiff's favor either granting benefits or remanding plaintiff's claim for review on permissible fac-

---

non-treating physician's opinion, a court should weigh the following factors: "(1) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; (v) other relevant factors." *Durr*, 15 F.Supp.2d at 213 (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

tors only. Plaintiff's response shall be filed no later than November 3, 2000.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment [doc. # 20] is DENIED.

IT IS SO ORDERED.