**Goldie MILLER, as Executrix of the Estate of Sarah M. Potok, Plaintiff–Appellee,**

v.

**UNITED WELFARE FUND, Defendant–Appellant.**

**No. 1108, Docket 94–7908.**

United States Court of Appeals, Second Circuit.

Argued Jan. 18, 1995.

Decided Dec. 19, 1995.

Stephen H. Kahn, New York City (Opton Handler Gottlieb Feiler Landau & Hirsch), for Defendant–Appellant United Welfare Fund.

Bernard D'Orazio, New York City (Khosrova & D'Orazio), for Plaintiff–Appellee Goldie Miller.

Before: WALKER, JACOBS and CALABRESI, Circuit Judges.

WALKER, Circuit Judge:

Goldie Miller ("Miller") brought suit against the United Welfare Fund (the "Fund") under § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), on behalf of her sister, Sarah Potok ("Potok"), to recover medical benefits for private duty nursing care that Potok received following an unusually complex multiple coronary bypass surgery. The district court for the Eastern District of New York (John R. Bartels, *District Judge*), concluded that the Fund had acted arbitrarily and capriciously in denying the benefits. *Miller v. United Welfare Fund*, 851 F.Supp. 71, 74–75 (E.D.N.Y.1994). After denying both parties' motions for summary judgment, the district court held a bench trial that resulted in a judgment for Miller directing the Fund to pay medical expenses for private duty nursing care, plus interest and attorneys' fees. *Miller v. United Welfare Fund*, No. 93 Civ. 2057, slip op. at 10 (E.D.N.Y. May 30, 1994). The Fund appeals the judgment. We vacate and remand.

## BACKGROUND

On May 1, 1989, Sarah Potok became a participant in the Fund, which is an employee welfare benefit plan as defined by § 3(1) of ERISA, 29 U.S.C. § 1002(1). In the fall of 1990, Potok's cardiologist, Dr. James A. Blake, diagnosed her as suffering from Chronic Obstructive Pulmonary Disease. Although Potok was a poor candidate for cardiac surgery because of her advanced age and severe lung damage, Dr. Blake recommended cardiac surgery since diagnostic studies indicated she would survive no more than three months without such treatment.

In late October, Potok underwent multiple coronary bypass surgery performed by Dr. Samuel Lang at New York Hospital (the "Hospital"). Complications prevented a routine bypass procedure and required an innovative surgical alternative. According to Dr. Blake, Potok's surgery was successful, but she experienced a number of problems because of the unusual nature of the operation as well as her advanced age and poor health. She remained in the cardiothoracic intensive care unit for an entire week, as compared with the more typical stay of one to one-and-a-half days. Potok was then transferred to the cardiothoracic step-down unit for a brief period, and finally to the cardiothoracic telemetry unit, the "regular floor" for post-cardiac surgery patients.

During the post-operative period, Potok contracted pneumonia and experienced breathing difficulty and heart arrhythmia. She also had a stroke, which heightened her sense of disorientation and hindered her expressive abilities. Faced with these circumstances, Dr. Blake recommended to Miller that Potok have full private duty nursing care in the telemetry unit. Miller thereupon

hired private duty nursing care for the duration of her sister's stay in the telemetry unit. Approximately five weeks after her admission, Potok was finally discharged from the hospital to a rehabilitation center. Eventually, she was able to return home and live independently. Unfortunately, in March of 1991, Potok died from an unrelated cause.

On December 18, 1990, Miller claimed $14,060.50 from the Fund for reimbursement of the costs of her sister's private duty nursing care. With the claim, Miller submitted a copy of the following letter from Dr. Blake dated December 6, 1990:

> I am writing in regard to my patient Sarah Potok. Mrs. Potok is an elderly female who recently underwent coronary artery bypass surgery for severe unstable angina. Her immediate postoperative course was complicated by pneumonia, arrhythmia and disorientation. Because of the severity of her illness the medical team recommended to her that she have full time private duty nursing. Beginning on November 4th and continuing to November 26th, Mrs. Potok received 24 hour private nursing. This nursing performed thorough pulmonary toilet, continually monitored her mental status, as well as her rhythm.
>
> Mrs. Potok made a meaningful recovery and can look forward to returning to an active and productive life. It is undoubtedly. the case that the thorough nursing care which she received is in large part responsible for the superb improvement which this patient demonstrated. Thank you once again. If I can be of any further assistance please do not hesitate to ask.

In March and April of 1991, Aetna, the Fund's claim processor, requested additional information, including a copy of the nursing notes. After reviewing the claim with the additional information in hand, one of Aetna's claims adjudicators concluded that the private duty nurses performed routine tasks that could have been performed by floor nurses and that therefore the private duty nurses were not "medically necessary." Miller received a letter from Aetna, dated June 26, 1991, denying the claim and advising Miller that she had a right to appeal and to review the relevant documents.

In February 1992, Miller appealed by letter to the Board of Trustees of the Fund (the "Trustees" or the "Board"), fiduciaries of the plan as defined by § 3(21) of ERISA, 29 U.S.C. § 1002(21). On April 29, 1992, a four-member subcommittee of the Board reviewed Potok's claim. Edward Byrne ("Byrne"), the Fund's administrator, prepared a three-sentence report for the Trustees that stated that Miller sought payment for the private duty nursing care, listed the documentation Miller had submitted, and set forth the amount in question. During the brief meeting to consider the appeal, Byrne had Potok's complete claim file before him, including Dr. Blake's letter, the nurses' notes, Aetna's analysis of the claim, and Miller's correspondence. In contrast, Byrne only provided the subcommittee members with a copy of his three-sentence report. Neither the Trustees nor any Fund staff member had a medical background, and they consulted no medical experts in connection with their review of the claim. After discussing Byrne's brief report, the subcommittee denied the claim.

In a letter dated June 23, 1992, the Trustees informed Miller that

> [i]n order for private duty nursing services to be considered medically necessary, they must be such that the nature of the illness or injury must require constant medical care that *could not have been provided by the general nursing staff.* The services provided by the private duty nurses, could have easily been performed by the general nursing staff.

(emphasis in original). Aetna had cited this same reason, nearly verbatim, in its earlier denial letter.

On April 15, 1993, Miller, as executrix of Potok's estate, brought suit against the Fund in the Civil Court of the City of New York. The Fund removed the action to the Eastern District of New York because it was governed by ERISA. Shortly thereafter, the parties cross-moved for summary judgment: the Fund, on the basis that the court should defer to the Board's decision; and Miller, on the basis that the Trustees' decision was "arbitrary and capricious, and deprived [Po-

tok] of [her] rights guaranteed by ERISA." *Miller,* 851 F.Supp. at 73.

In support of its summary judgment motion, the Fund submitted an affidavit of the Aetna representative who denied the claim. She stated that she had done so because the care was not medically necessary since the private nurses performed routine nursing duties. Miller offered excerpts from a deposition of Byrne and an affidavit from a registered nurse, Maria Daly Cho, who after reviewing the nursing notes concluded that the nurses provided more than routine patient care.

After considering the conflicting affidavits, the district court denied the motions for summary judgment. *Id.* at 74–75. The district court concluded, however, that of the three items in Miller's file—Dr. Blake's letter, the nursing notes, and Aetna's recommendation and denial—only the denial supported the Fund's decision. *Id.* at 74. It further found that in relying on Aetna's denial alone, the Fund had deprived Miller of her right to a full and fair review as required by § 503, 29 U.S.C. § 1133, and thereby had acted "arbitrarily and capriciously." *Id.* at 75.

On May 2, 1994, the district court held a bench trial. Noting its previous finding that the Trustees' denial of the claim was "arbitrary and capricious," *Miller,* No. 93 Civ. 2057, slip op. at 2, the court reviewed de novo Miller's assertions that the nursing services were medically necessary and therefore covered by the plan, *id.* In so doing it considered evidence outside the administrative record, such as testimony from Dr. Blake, which it credited in full since the Fund "offered no medical evidence at trial in the form of a physician's testimony, and therefore failed to rebut Dr. Blake's opinion." *Id.* at 5. The district court concluded that Miller had "demonstrated by a preponderance of the evidence that [the private nursing] services were medically necessary, and therefore covered by the Benefits Plan." *Id.* at 7.

Even though the action was only for the benefit of a single plan participant, the court awarded Miller attorneys' fees since the court concluded that such an award was likely to deter similar conduct, the Fund could satisfy the modest fee request, and the Fund

did not act in good faith in failing to offer testimony of a physician at trial. *Id.* at 8. With interest, the total judgment awarded to Miller, including fees and costs, was $39,-450.13. *Id.* at 10. The Fund appeals from this judgment.

## DISCUSSION

The Fund raises three claims of error by the district court on appeal: 1) its finding that the Trustees acted arbitrarily and capriciously; 2) its conclusion that private nursing was medically necessary; and 3) that it abused its discretion in awarding attorneys' fees. Before addressing these claims, we must decide two preliminary issues: 1) the appropriate standard of review; and 2) whether the district court should have considered evidence that was not presented to the Trustees.

### I. *Standard of Review*

When an employee benefit plan grants a plan fiduciary discretionary authority to construe the terms of the plan, a district court must review deferentially a denial of benefits challenged under § 502(a)(1)(B). *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). The court may reverse only if the fiduciary's decision was arbitrary and capricious, that is " 'without reason, unsupported by substantial evidence or erroneous as a matter of law.' " *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995) (quoting *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993)). Here the district court found, and the parties do not dispute, that the Fund had such discretionary authority under the July 16, 1990 amendments to the Agreement and Declaration of Trust. 851 F.Supp. at 74. Thus, the district court was entitled to reverse only if the Trustees' decision was arbitrary or capricious.

We review de novo the district court's legal conclusion that there was no basis for the Fund's decision. *See Taft v. Equitable Life Assurance Soc'y,* 9 F.3d 1469, 1471 (9th Cir.1993); *cf. Banker v. Nighswander, Martin & Mitchell,* 37 F.3d 866, 870 (2d Cir.1994)

(requiring de novo review of the lower court's "application of . . . facts to draw conclusions of law"). In so doing, however, we must review the Trustees' decision under the arbitrary and capricious standard. *See Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 599–601 (5th Cir.1994).

## II. *Evidence Outside the Administrative Record*

One of the Fund's primary criticisms is that the lower court considered evidence in support of Potok's claim that was outside the administrative record, i.e., the evidence before the Trustees. Specifically, it points to the court's reliance on the affidavit of Nurse Daly Cho, which the Trustees did not consider.[1]

 Most circuits have declared that, in reviewing decisions of plan fiduciaries under the arbitrary and capricious standard, district courts may consider only the evidence that the fiduciaries themselves considered. *See Lee v. Blue Cross/Blue Shield*, 10 F.3d 1547, 1550 (11th Cir.1994) (requiring courts "to look only to the facts known to the administrator"); *Taft*, 9 F.3d at 1471–72 (fearing that examination beyond the administrative record would too easily lead to findings of abuse of discretion, defeating the goal of ERISA to resolve disputes expeditiously); *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 48 n. 8 (3d Cir.1993); *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 380–81 (10th Cir.1992); *Oldenburger v. Central States Pension Fund*, 934 F.2d 171, 174 (8th Cir.1991); *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir.1990) (noting that both de novo and arbitrary and capricious standards of review do "not mandate or permit the consideration of evidence not presented to the administrator"). Only the Fifth Circuit has allowed a broader scope of review. *See Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 638, 642 (5th Cir.1992) (allowing district courts to look beyond the administrative record to review the administrator's plan interpretation, but not to review "the historical facts underlying a claim").

We follow the majority of our sister circuits in concluding that a district court's review under the arbitrary and capricious standard is limited to the administrative record. Because district courts are required to limit their review to the administrative record, it follows that, if upon review a district court concludes that the Trustees' decision was arbitrary and capricious, it must remand to the Trustees with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a "useless formality." *See Wardle v. Central States, Southeast & Southwest Areas Pension Fund*, 627 F.2d 820, 828 (7th Cir.1980) (citing *Ruth v. Lewis*, 166 F.Supp. 346, 349 (D.D.C.1958)), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). This rule is consistent with the fact that nothing "in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators" and with the ERISA "goal of prompt resolution of claims by the fiduciary." *Perry*, 900 F.2d at 966.

 While the district court did not rely on evidence outside the administrative record in determining that the Board acted arbitrarily and capriciously, it erred in considering extrinsic evidence during the bench trial to determine whether the private duty nursing care was medically necessary and therefore covered under the plan. *Miller*, No. 93 Civ. 2057, slip op. at 2. The district court never stated why it held a de novo bench trial. It did not suggest that it failed to remand because it was concerned the Fund acted in bad faith.[2] Nor did it conclude that

---

1. We note that the Fund's position in this regard is not consistent since it criticizes the court for refusing to admit an Associate Professor of Nursing's testimony, which was favorable to it, and for refusing to admit into evidence the Hospital's nursing protocols. The Fund also cited in support of its motion for summary judgment an affidavit from Byrne, which was not part of the administrative record.

2. The court did later find that the Fund did not act in good faith in failing to offer the testimony of a physician at trial, *Miller*, No. 93 Civ. 2057, slip op. at 8, but it never actually found that the initial denial constituted bad faith.

the evidence in the administrative record pointed only in favor of granting the claim. Consequently, the district court erred in reviewing the claim under the de novo standard.

We agree with the district court that the Fund's decision was arbitrary and capricious. We do not find, however, that upon a more complete record a reasonable fiduciary would necessarily have to grant the claim or that a remand to the Trustees would be a useless formality. Therefore, we vacate and remand to the district court with the instruction that the case be returned to the Fund for reconsideration.

### III. *The Decision was Arbitrary and Capricious*

■■■ In reviewing the administrator's decision deferentially, a district court must consider "whether the decision was based on a consideration of the relevant factors." *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995) (quotations omitted). A denial of a claim challenged under § 502(a)(1)(B) is arbitrary and capricious if "there has been a clear error of judgment," *id.* (quotation omitted), that is, if the decision was " 'without reason, unsupported by substantial evidence or erroneous as a matter of law,' " *Pagan,* 52 F.3d at 442 (quoting *Abnathya,* 2 F.3d at 45). Substantial evidence in turn "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] . . . requires more than a scintilla but less than a preponderance." *Sandoval,* 967 F.2d at 382 (quotations omitted).

■■■ In reviewing the Trustees' decision under the arbitrary and capricious standard, as our de novo review of the district court's decision requires, we find that the denial of the claim was not supported by substantial evidence. We have no basis for concluding that the Trustees' decision rested on anything other than the three-sentence report. Reliance on such limited information to deny the claim was arbitrary and capricious since it was not "based on a consideration of the relevant factors." *See Jordan,* 46 F.3d at 1271 (quotation omitted). Moreover, even if Byrne had explained in detail

the contents of the administrative record— Blake's letter, the nursing notes, and Aetna's claim analysis and denial—each item either buttressed Miller's position or was neutral. We examine each piece of evidence in turn.

First, as Judge Bartels found, the nursing notes could not have been evidence in favor of the Fund's decision since the Trustees at best gleaned no information from them and at worst did not understand them. In reviewing the denial of Potok's claim, the subcommittee did not actually examine the nursing notes; rather, it relied on the summary provided by Byrne. As Byrne's deposition indicates, however, he found no evidence in the notes to justify the Fund's ultimate denial of the claim. While Byrne first stated that the notes supported the Fund's conclusion in part, Byrne later testified that he did not "really" reach any conclusions or obtain any information on the basis of the nursing notes, which at best he "understood somewhat" or could not understand at all.

A Fund employee, Pat Komoroski, who was neither a nurse nor a physician, also reviewed the notes in preparation for the meeting with the Trustees. However, she did not testify and Byrne could not recall whether she understood the notes. He had no knowledge as to whether anyone who interpreted the notes for the Trustees received any assistance in understanding them. Thus, without such interpretation, the nursing notes were useless to the Trustees.

Even if the notes had been explained adequately to the Trustees, they do not lend support to the Trustees' position. While the Fund may be correct in stating that the notes do not prove the medical necessity of private nursing, the notes do not support the conclusion that the nursing care was *not* necessary. In particular, they offer no indication as to the availability and ability of the Hospital's nurses to provide the same level of care that Potok received from the private duty nurses. Thus, we find the notes nondeterminative.

Second, we find that Dr. Blake's letter did not support the Board's conclusion. While the letter did not use the term "medically necessary," it plainly reflects Dr. Blake's be-

lief that the private duty nursing care was necessary. Dr. Blake pointed out the severe complications of Potok's post-operative care, thus distinguishing Potok's case from that of the typical patient recovering from coronary artery bypass surgery. He noted that "[b]ecause of the severity of her illness," the medical team recommended the nursing care. Moreover, his language suggests that were it not for the private nursing, Potok would not have "made a meaningful recovery [with the prospect of] returning to an active and productive life."

This letter leads only to the conclusion that the private duty nursing care was medically necessary and that such care could not have been provided by the Hospital nurses. It contains the professional opinion of an expert who knew Potok's medical condition extremely well and it expresses the views not only of Dr. Blake but also of the medical team at the Hospital. It is reasonable to assume that Dr. Blake and the medical team were well aware of the nature and availability of nursing care at the Hospital and that they believed it would not be sufficient for Potok's particularly egregious condition.

Third, the only piece of record evidence supporting the Trustee's decision was Aetna's denial, which was the very decision the Fund was reviewing. The Fund argues that, given its right to consult experts, it should be able to rely on the denial in reviewing the appeal. Yet it offers no evidence to support its implied claim that the Aetna claim reviewer was an expert on the type of care that staff nurses could provide. Moreover, while the Fund was not prohibited from agreeing with Aetna, Aetna's speculation, without supporting medical evidence, is insufficient to justify the Fund's decision.

Finally, the Fund defends its decision by contending that underlying all of the evidence is the "common-sense conclusion that patients at New York Hospital do not have to hire their own private nurses in order to ensure that they receive the medically required care." In effect, the Fund argues that both "common sense" and the very decision it was reviewing were sufficient to overcome Dr. Blake's statement that he and the medical team at New York Hospital believed that private nursing care was necessary for Potok's full recovery. We find that the Fund's *ipse dixit* pronouncement, based simply on New York Hospital's reputation, and Aetna's view of the circumstances were insufficient to contradict the only piece of expert evidence. *See Catania v. NYSA–ILA Severance Benefit Fund,* No. 91 Civ. 3262, 1992 WL 176502, at *8–9, 1992 U.S.Dist. LEXIS 10985, at *24–27 (S.D.N.Y. July 15, 1992) (finding trustees acted arbitrarily when they denied a claim supported by a treating physician's letter without contradictory medical evidence and based on nothing more than speculation); *Pritt v. United Mine Workers of Am.,* 847 F.Supp. 427, 433 (S.D.W.Va.1994) (finding the denial of nursing benefits unreasonable because the defendants were "unable to point to any 'substantial medical evidence' supporting the denial of benefits [and] ... the only substantial medical evidence supports the opposite conclusion").

Moreover, as the Fund itself points out, trustees have an affirmative duty to seek expert advice when required. *Donovan v. Bierwirth,* 680 F.2d 263, 272–73 (2d Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). If they felt that the Hospital's nurses could have provided the type of care Potok received from the private nurses, it was incumbent upon them to seek the sort of medical evidence that they attempted to introduce at trial to determine whether their speculation was correct. Thus, for the foregoing reasons, we find that the Fund's decision was not based on substantial evidence and that therefore it acted arbitrarily and capriciously.

## IV. *Reconsideration by the Fund*

Although we find that the Trustees' decision was arbitrary and capricious, we do not conclude that Miller's claim necessarily should have been granted because we do not find that, upon the receipt of additional evidence, a reasonable fiduciary could only have granted the claim. Therefore, we remand to the district court with the instruction that the case be returned to the Fund for reconsideration. *See Catania,* 1992 WL 176502, at

*9–10, 1992 U.S. Dist. LEXIS 10985, at *28–29.

■ The present record is incomplete and we therefore cannot conclude that there is no possible evidence that could support a denial of benefits. The burden of proving the medical necessity of the nursing care Potok received remains with Miller. *See Fuja v. Benefit Trust Life Ins. Co.,* 18 F.3d 1405, 1408 (7th Cir.1994) (holding that where, as here, the "medically necessary" provision is described in the benefits section of the insurance contract rather than the "exclusions" section, the plaintiff bears "the burden of establishing her entitlement to the insurance benefits"). At the hearing, Miller provided evidence from a reliable expert, Potok's cardiologist, that the care was medically necessary. Upon receipt of this case, the Fund should be given the opportunity to present conflicting or contradictory evidence to overcome this evidence. Miller must then be permitted to produce any additional evidence to rebut any evidence on which the Fund could rely to deny benefits.

In conclusion, we find that the Fund acted arbitrarily and capriciously in denying the benefits to Potok. We remand to the district court with instructions to return the case to the Fund for reconsideration in the light of evidence presented by both sides.

### V. *Award of Attorneys' Fees*

■ The Fund also challenges the district court's decision to award attorneys' fees to Miller. Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), allows district courts, within their discretion, to award attorneys' fees and costs to either party. The factors that govern such awards are

(1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 871 (2d Cir.1987).

After concluding that the final factor was not applicable because the action involved only one beneficiary but that the first four factors weighed in favor of the plaintiff, the district court granted fees and costs to Miller. *Miller,* No. 93 Civ. 2057, slip op. at 8. In light of our holdings above, we remand to the district court for a reweighing of the factors under § 502(g)(1) and a recalculation of the amount, if any, of attorneys' fees to be awarded to Miller.

■ Notwithstanding that we decline to grant benefits to Miller but rather remand the district court's determination for further consideration, an award of attorneys' fees to plaintiff is not precluded. Section 502(g)(1) contains no requirement that the party awarded attorneys' fees be the prevailing party. *Cf.* 29 U.S.C. § 1132(g)(2). The district court may award attorneys' fees to either party "in its discretion." Moreover, the district court may in fact determine that Miller is the prevailing party to the extent that her motion for summary judgment claimed that the Fund's denial was arbitrary and capricious. *See Sansevera v. E.I. DuPont de Nemours & Co.,* 859 F.Supp. 106, 117 (S.D.N.Y.1994) (granting attorneys' fees to plaintiff whose summary judgment motion was partially granted as to claim that Plan Board acted arbitrarily and capriciously in denying benefits).

### CONCLUSION

For the foregoing reasons we vacate and remand with instructions for further consideration in accordance with this opinion.

CALABRESI, *Circuit Judge,* concurring in part and dissenting in part:

ERISA requires that courts give deference to trustees' discretionary decisions to deny claims for benefits. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). The scope of this deference is substantial. Even when a court finds the trustees' decision to be arbitrary and capricious, the court typically will not substitute its own judgment for that of the trustees, but will return the claim to them for reconsideration. *See* Opinion at 1073 (citing *Catania v. NYSA–ILA Severance Benefit Fund,* No. 91 Civ. 3262, 1992 WL 176502, at *9–10, 1992 U.S.Dist. LEXIS 10985 at *28–29 (S.D.N.Y. July 15, 1992)). This procedure is consistent with Congress's apparent intent that district courts not " 'function as substitute plan administrators.' " Opinion at 1071 (quoting *Perry v. Simplicity Eng'g,* 900 F.2d 963, 966 (6th Cir.1990)). Thus, returning the claim to

the trustees is inappropriate only in those cases in which the full evidentiary record admits of only one possible conclusion, or where reconsideration by the trustees would, for other reasons, be a " 'useless formality.' " Opinion at 1071 (quoting *Wardle v. Central States, S.E. & S.W. Areas Pension Fund,* 627 F.2d 820, 828 (7th Cir.1980) (internal citation omitted)).

Thus far, I am in complete agreement with the majority. I also agree with the majority's determination that the Fund's denial of Ms. Miller's claim was arbitrary and capricious. Unlike the majority, however, I believe there is a significant risk that sending the claim back to the trustees would be a useless formality in the case before us.

Reconsideration by the trustees may be a useless formality for at least two different reasons. When a fully developed evidentiary record permits only one conclusion, the district court may properly impose that result itself. The resolution of the claim is indisputable, and requiring the trustees to reconsider their decision would simply be a waste of time. Similarly, when the trustees have demonstrated a manifest unwillingness to give fair consideration to evidence that supports the claimant, the claim should not be returned to the trustees. In such cases, it may well be that the evidence would support either a decision to grant or a decision to deny benefits. But reconsideration by the trustees would nevertheless be inappropriate because the claimant cannot obtain a fair hearing. The requirement that courts defer to the decisions of trustees cannot mean that we must affirm decisions by trustees who are so biased, obstinate, or lazy that they will not hear the claimant. In such situations, the right to a hearing, which is required by the benefit plan, would be wholly illusory.

I cannot say for sure that the Fund in this case has demonstrated such an unwillingness to consider the merits of Ms. Miller's claim. But if I had to decide the matter on the record before us, I would disagree with the majority and would find that the trustees exhibited just this sort of unwillingness. The cold record reveals a set of trustees who totally abdicated their fiduciary responsibilities in rendering their initial decision. They made it abundantly clear that all that mattered to them was the conclusion reached by the insurance company, which was anything but a disinterested party. It may be that on reconsideration, properly chastised by this court's opinion, the trustees will exercise their authority in a more appropriate manner and render a decision based on all the evidence before them. But how can this court, on this record, fairly evaluate that possibility?

The district court has far greater familiarity and experience with both the parties and the circumstances of this case than we do. For example, on one collateral matter, it indicated that the trustees had acted in bad faith. This fact does not, by itself, preclude the possibility that reconsideration by the trustees may be more than a useless formality. But it is the sort of datum the trial court can place in context and evaluate far better than we can. I believe that the district court is far better situated than we are to determine whether sending the claim back to the trustees would be both unfair and a waste of time. For that reason, I would allow the district court to make this decision on the basis of the standard set forth by the majority.

Accordingly, I dissent from that portion of the majority's opinion that instructs the district court to require the trustees to reevaluate Ms. Miller's claim.