Andrea THOLKE, Plaintiff–Appellant,

v.

UNISYS CORPORATION, The Unisys Long–Term Disability Plan and the Unisys Employee Benefits Administrative Committee, Hartford Life and Accident Insurance Co., Lockheed Martin and the Lockheed Martin Long Term Disability Insurance Plan, Defendants–Appellees.[1]

No. 03–7615(L), 03–9023(CON).

United States Court of Appeals, Second Circuit.

May 5, 2004.

Robert J. Bach, New York, NY, for Plaintiff–Appellant.

Jennifer B. Courtian (Gregory I. Rasin, on the brief), Jackson, Lewis LLP, New York, NY, for Defendants–Appellees.

Present: OAKES, WINTER, and CALABRESI, Circuit Judges.

---

1. The official caption notwithstanding, Hartford Life and Accident Insurance Co. is not a party to this appeal due the district court's grant of a stipulated dismissal with prejudice.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **VACATED** and **REMANDED** for further proceedings.

Plaintiff-appellant Andrea Tholke ("Plaintiff") was hired by the predecessor of defendant-appellee Unisys Corporation ("Unisys") as a mailroom clerk in 1980. Three years later, she became a reproducer, or copy-machine operator. Plaintiff has long suffered from cerebral palsy, a condition that has caused her to undergo various surgeries and that has given her a limp on her right side. On December 5, 1992, she was involved in a car accident, which resulted in injuries to her left knee, neck, and back. As a result, she missed work and collected benefits under Unisys's short-term disability plan for more than a year. On February 16, 1993, she returned to her position, but, several months later, she left work permanently, due to complaints of constant knee pain.

On February 1, 1994, Plaintiff filed an application for benefits under Unisys's long-term disability plan (the "plan"). The plan, in pertinent part, defines employees as "disabled" when they have an injury or illness that renders them unable to perform the "essential functions" of their "regular occupation at any job site within Unisys." Hartford Life Insurance Co. ("Hartford") was in charge of processing the application. In addition to considering the opinion of Plaintiff's treating physician, Dr. Isaac Cohen, Hartford referred Plaintiff to Drs. Armand Prisco and Charles Pitman for "independent medical examinations."[2] Hartford also sought to supplement Plaintiff's description of the physical demands of her former job with information from Unisys. Thereafter, Hartford denied long-term disability benefits, finding that Plaintiff was not disabled for purposes of the plan. Hartford also denied two of Plaintiff's appeals.

The information before Hartford relating to Plaintiff's medical condition consisted of the following: 1) an MRI that showed no internal derangement in Plaintiff's left knee; 2) Dr. Cohen's diagnosis of an internal derangement of her left knee, as well as cervical and lumbar spine injuries; his report of Plaintiff's complaints of severe pain in her left knee; and his opinion that Plaintiff was "totally disabled";[3] 3) Dr. Prisco's diagnosis of a contusion of the left knee and cervical and lumbar spine sprains, and his opinion that Plaintiff did not have a serious knee condition and could return to her job as a reproducer; 4) Dr. Pitman's diagnosis of a "post contusion" left knee and cervical and lumbar spine strain; his failure to find evidence of internal derangement; his opinion that Plaintiff suffers from a "moderate partial disability primarily on the basis of her cerebral palsy"; and his conclusion that she could return to her work as a "copy person"; and 5) a "physical capacities evaluation form" completed by Dr. Pitman, which indicated, among other things, that Plaintiff could only perform "sedentary work,"[4] that she could at most walk one to two hours intermittently in an eight-hour

---

**2.** All three doctors are orthopedic surgeons.

**3.** Hartford asked Dr. Cohen to submit objective findings to support his conclusions, and Unisys claims that Dr. Cohen never responded in a satisfactory fashion.

**4.** Citing the categories established by the U.S. Department of Labor, the form defined "sedentary work," which is the least demanding form of work, as follows:

Lifting 10 lbs. maximum and occasionally lifting and/or carrying such articles as dockets, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required only occasionally and other sedentary criteria are met.

work day, that she could never stoop, kneel, crouch, or carry or lift anything over twenty pounds in weight, and that she should refrain from bending at the waist while bearing weight.[5]

With regard to the physical demands of Plaintiff's job as a reproducer, Sal Scalise, a supervisor at Unisys, initially submitted to Hartford a "physical demands analysis" form that seemed to corroborate Plaintiff's description of her job as one that is physically demanding. Specifically, the form indicated that, in an eight-hour day, the job required 3—4 hours of walking, 5—6 hours of bending over, 3—4 hours of crouching/stooping, 1—2 hours of kneeling, and that, 33—66% of the time, an employee would have to lift or carry 26—50 lbs. According to Unisys's brief, Hartford then asked Scalise to complete a new form that reflected the job "actually performed" by Plaintiff in light of her cerebral palsy.[6] Scalise responded with a new form that reflected lesser demands, including, in an eight-hour work day, 4 hours of walking, 0—33 % of the time lifting or carrying 11—20 lbs., never carrying over 20 lbs., 0—33% of the time bending or stooping, and never kneeling or crawling. Additionally, Scalise stated on the form that Plaintiff's job qualified as "sedentary work." In a subsequent phone conversation, Scalise further amended his description and said that Plaintiff rarely had to lift 20 lbs., that she primarily had to lift 5 lbs., that she

could sit as much as 7—8 hours in any given day, that she would only have to bend if she dropped a piece of paper, that her job had been modified to accommodate her cerebral palsy, and that he was willing to have someone assist Plaintiff or to modify her job.

After Hartford denied Plaintiff's second appeal, Plaintiff appealed again, and this appeal was referred to the Unisys Employee Benefits Administrative Committee (the "Committee"), which was the designated Plan Administrator. Mary Massman, a non-voting member of the Committee, reviewed Plaintiff's file and wrote a six-page summary and report, which recommended upholding the denial of benefits. On August 3, 1995, after discussing the case, the Committee adopted the recommendation and denied benefits.

On June 18, 2001, Plaintiff brought this action against Unisys and other defendants in the United States District Court for the Southern District of New York. Pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., she sought an order finding her disabled under the long-term disability plan. On cross motions for summary judgment, the district court (Baer, J.) agreed with Plaintiff that the Committee's review of her case was more "perfunctory" than "full and fair," and that its determination that Plaintiff was not disabled was therefore "arbitrary and capricious."[7] Ac-

---

The next category of work, "light work," is defined as follows:

> Lifting 20 lbs. maximum with frequent lifting and/or carrying objects weighing up to 10 lbs. Even though the weight lifted may be only a negligible amount, a job is in this category when it involves sitting most of the time with a degree of pushing and pulling of arm and/or leg controls, or when it requires walking or standing to a significant degree.

**5.** There is no indication that any of the three doctors asked Plaintiff about the physical de-

mands of her job or otherwise obtained such information.

**6.** The letter reflecting this request is not in the record.

**7.** The parties agree that, due to the fact that the plan grants the Committee discretion with regard to benefits determinations, the district court properly reviewed the Committee's decision under the arbitrary-and-capricious standard. This standard means that a court may reverse only if the decision was "without reason, unsupported by substantial evidence

cordingly, it denied the defendants' motion and granted Plaintiff's motion, but only to the extent of remanding the case to the Committee for further consideration. The court directed the Committee to examine fully (and presumably resolve) "(1) the discrepancy between the statements by [Plaintiff] and her supervisors as to the nature of her job, and (2) the discrepancy between the diagnoses of Dr. Cohen, Dr. Prisco and Dr. Pitman."[8]

The Committee thereupon retained an orthopedic surgeon, Dr. Richard Silver, to serve as a consultant and to review the conflicting medical opinions. (Dr. Silver did not, however, perform an examination of Plaintiff.) The Committee also invited Plaintiff to provide it with further information, and Plaintiff responded by submitting a personal affidavit, as well as affidavits from two of her former coworkers.

In his five-page report to the Committee, Dr. Silver concluded that the primary diagnosis affecting Plaintiff's ability to work was her cerebral palsy and that she had only a "mild impairment" due to the car accident. With regard to her left knee, Dr. Silver noted that both Dr. Pitman and Dr. Prisco found no serious problems, and he decided, in substance, that Dr. Cohen's contrary conclusion was untenable due to the lack of any supporting objective findings. As for Plaintiff's ability to work, Dr. Silver stated that Plaintiff "could certainly perform duties consistent with a sedentary position. She could sit predominantly and walk periodically for five or ten minutes. She would need to avoid carrying anything greater than 10 to 15 pounds." Later in the report, Dr. Silver noted the conflicting descriptions of Plaintiff's job, and remarked that "[t]his is not something as an orthopedic surgeon that can be easily deciphered."

Plaintiff's affidavit gave a detailed description of her former job. She stated that she had to stop working in July 1993 because her left knee was in "constant pain" and the "reproducer's job is a very physical job. You are on your feet all the time, walking continuously, carrying reams of paper to and from the machine, bending to load the machine, kneeling and crouching to clear the jams in the machine." She emphasized that, in addition to carrying copy jobs to the copy machine and then carrying the completed copies to the distribution racks, she would have to carry reams of paper from the supply shelf to the copy machine, and, when there was no paper on the shelves, she would have to get paper from the supply room, which involved moving boxes weighing between 50—55 lbs. Plaintiff also flatly denied that her supervisors had made any modifications to her job to accommodate her cerebral palsy. An affidavit by her former coworker, Ann. R. Morelli, corroborated both Plaintiff's description of the physical demands of the job and her claim that she was given no accommodations.

On July 8, 2003, the Committee met to discuss Plaintiff's case, during which Dr. Silver was consulted by phone. According to the minutes taken at the meeting, the Committee agreed with Dr. Silver's conclusion that there was no objective medical

---

or erroneous as a matter of law." *Miller v. United Welfare Fund,* 72 F.3d 1066, 1070 (2d Cir.1995) (internal quotation marks omitted). Substantial evidence "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] ... requires more than a scintilla but less than a preponderance." *Id.* at 1072 (internal quotation marks omitted, alteration in the original). Additionally, a decision must be "based on a consideration of the relevant factors." *Id.* (internal quotation marks omitted).

8. The court retained jurisdiction over the matter, and either party could reopen by so notifying the court within thirty days of the Committee's final determination.

evidence to support Plaintiff's subjective complaints of knee pain. The Committee noted the difficulty in conclusively determining the nature of Plaintiff's job duties and whether accommodations had been made for her, but stated that, "based on a common sense evaluation," it was likely that her actual duties "fell somewhere between" Plaintiff's and her supervisors' descriptions and that it was also likely that Plaintiff's fellow employees "pitched in and assisted her to perform her functions." The Committee, however, decided that it did not need to resolve the controversy over her job duties, because Dr. Silver stated (apparently during the meeting) that Plaintiff was capable of performing her former job under either her or her supervisors' descriptions of it. The Committee memorialized its decision denying benefits in a July 15, 2002 letter addressed to Plaintiff's attorney.[9]

On August 12, 2002, Plaintiff's attorney sent the district court a two-page letter advising it of the Committee's decision, asserting that the Committee had failed to follow the district court's instructions, and asking that the matter "be scheduled for trial." On August 16, 2002, the defendants sent a letter to the district court, which argued that the Committee's decision was fully supported by the evidence and that a trial would be inappropriate. The defendants requested that the district court grant their motion for summary judgment, despite the fact that–their earlier motion having been previously denied–there was no such motion pending before the court. The defendants also requested, in the alternative, that the court permit them to renew their motion for summary judgment "in light of the Committee's review of Plaintiff's claim on remand."

After defendants' letter, many months passed without any communication between the parties and the district court, with the exception of the defendants' submission of the post-remand record to the district court and some ex-parte phone calls between the district court's clerk and the parties. On May 21, 2003, without giving prior notice to the parties that it was considering summary judgment, the district court issued an opinion and order holding that the Committee's denial of benefits was not arbitrary and capricious and granting summary judgment in favor of the defendants. On June 4, 2003, Plaintiff's counsel submitted a letter to the district court requesting that it withdraw its opinion because counsel had not been given notice that the district court had rejected the request for a trial and that it was considering a grant of summary judgment. This request was denied without comment on June 4, 2003.

On June 24, 2003, Plaintiff made a motion pursuant to 29 U.S.C. § 1132(g)(1) to recover attorney's fees incurred in obtaining the district court's earlier judgment that the Committee's original denial of benefits had been arbitrary and capricious and had to be reconsidered. The district

9. The letter notes that, after the Committee first met, Dr. Silver faxed the Committee a "estimation of physical capacities" form that indicated various physical limitations that appeared to the Committee to be "inconsistent with Dr. Silver's report and his statements made at the Committee meeting." The form indicated, for example, that Plaintiff could only walk 1–2 hours in an eight-hour day, that she could lift or carry no more than 10 lbs., and that she could never stoop, kneel, or crouch. Dr. Silver also marked on the form that the patient had achieved "maximum medical improvement" on January 1, 1994. According to the letter, the Committee then conducted a follow-up teleconference with Dr. Silver, in which he apparently explained that the physical limitations indicated on the form only applied to the period before Plaintiff achieved "maximum medical improvement," and that he would place no restrictions on Plaintiff's abilities after she achieved this status.

court exercised its discretion to deny fees. The court stated that the fact that Plaintiff ultimately lost on her ERISA claim was a sufficient reason to support its decision. It, nevertheless, also went on to apply the factors set out in *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir.1987), and concluded that an award of fees was inappropriate.

Plaintiff appealed both the district court's grant of summary judgment and its decision to deny attorney's fees. She advances the following three arguments: 1) The district court erred in resolving the case by summary judgment, because the defendants did not file a motion for summary judgment in compliance with Fed. R.Civ.P. 56 ("Rule 56"), and, as a result, Plaintiff lacked an adequate opportunity to come forward with arguments and additional evidence on the merits; 2) The district court's grant of summary judgment was erroneous, due to, among other things, the Committee's failure to reconcile the conflicting job descriptions. This, Plaintiff asserts, was arbitrary and capricious because Plaintiff's description of her work put her job in the "light work" category, while Dr. Pitman and (at one point) Dr. Silver stated that Plaintiff could only perform "sedentary work"; and 3) The district court abused its discretion in denying attorney's fees, since the Plaintiff's initial victory in demonstrating that the Committee's original decision was arbitrary and capricious was deserving of fees regardless of the ultimate disposition of Plaintiff's claim.

We need not consider Plaintiff's second and third contentions, because we are persuaded by her first argument that the failure to follow the procedures required by Rule 56 made the district court's grant of summary judgment inappropriate. The defendants argue that, even though Rule 56 was not technically complied with, the district court's *sua sponte* grant of summary judgment was nevertheless appropriate. We disagree. While a *sua sponte* grant of summary judgment is proper in some circumstances, on the facts before us we cannot say that "following the procedures set out in Rule 56 would not [have] alter[ed] the outcome." *First Financial Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 115 (2d Cir.1999) (internal quotation marks omitted).

Plaintiff was not put on sufficient notice that it "had to come forward with all of its evidence and arguments," *id.* at 119, and it is more than possible that, if she had received such notice, she would have made significant arguments to the district court as to why the Committee's decision was arbitrary and capricious. Additionally, Plaintiff asserts that, had she had notice, she would have presented evidence to the district court tending to show that the Committee's proceedings were not "full and fair." While we cannot say whether such evidence exists or would be admissible, *see DeFelice v. Am. Int'l Life Assurance Comp.*, 112 F.3d 61, 66 (2d Cir.1997), we also cannot conclude the opposite, or that further consideration by the district court was not warranted.

We have some sympathy with the defendants' claim that Plaintiff's counsel could have been more diligent in communicating with the district court. Nevertheless, especially in a case like this, where the merits are difficult and proper briefing might well have been helpful to the district court, the more prudent course is to give Plaintiff a full opportunity to present her arguments and evidence. We therefore VACATE the district court's judgments and REMAND the case for further proceedings.