George HACHTEL, Plaintiff,

v.

THE CITIBANK, N.A., Long Term Disability Plan, The Citibank, N.A., Medical Plan, The Citibank, N.A., Dental Plan, The Citibank, N.A., Life Insurance Plan, The Citibank, N.A., Accident Insurance Plan, The Citibank, N.A., Savings Incentive Plan Defendant(s).

No. CV–98–5365 (TCP)(ARL).

United States District Court, E.D. New York.

Sept. 7, 2004.

Harry J. Binder, Binder & Binder, Hauppauge, NY, for Plaintiff.

Neil H. Abramson, Proskauer Rose, LLP, New York City, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Before this Court are two motions:

1. Citibank Long Term Disability Plan (the "LTD Plan"), and Citibank Medical Plan, Citibank Flexible Benefits Plan, Citibank Dental Plan, Citibank Life Insurance Plan, Citibank Accident Insurance Plan, and Citibank Retirement Plan ("Non–LTD Plans"), (collectively "Defendants"), move for summary judgment pursuant Fed.R.Civ.P. 56(c); and,

2. George Hachtel ("Plaintiff" or "Hachtel") cross-moves for summary judgment pursuant to Fed.R.Civ.P. 56(c).

For the following reasons, both Defendants' and Plaintiff's motions are **DENIED**.

### DISCUSSION

#### A. Factual Background

Prior to and including November 14, 1994, Plaintiff was employed as a Systems Programmer in the Information Management Systems at Citibank. (Defs. 3rd Amend. Rule 56.1 Statement at ¶¶ 23–4; Pl. 2nd Amend. Rule 56.1 Statement at ¶¶ 1–2). Plaintiff was a covered participant of the LTD Plan by virtue of his employment with Citibank. The LTD Plan is sponsored and funded by Citibank and administered by Aetna Life Insurance Company ("Aetna"). (Defs. 3rd Amend. Rule 56.1 Statement at ¶¶ 16–7; Green Aff., Exh. U). Aetna acts as the LTD Plan administrator and fiduciary. (Id.) Both the LTD and Non–LTD Plans are employee pension or welfare benefit plans subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). (Defs. 3rd Amend. Rule 56.1 Statement at ¶¶ 1–8).

Plaintiff alleges that on or about 1993, he developed a flu-like illness which caused him to suffer severe sore throat problems, extreme and debilitating exhaustion, lightheadedness and dizziness. (Montas Aff., Exh. A at 2). In December of 1993, Plaintiff sought medical treatment for these symptoms at his HMO medical center. Over the course of the next year, Plaintiff was seen by several different types of physicians in diverse areas of practice. (Montas Aff., Exh. A at 2).

Plaintiff alleges that his condition subsequently worsened and he began to suffer from constant fatigue, weakness and severe cognitive impairments requiring him to sleep excessively and take several sick days. Plaintiff's doctors informed him that he could have chronic fatigue syndrome ("CFS") or major depression. (Id.) In November of 1994, Plaintiff joined a support group for CFS, wherein he learned about a specialist in this area by the name of Dr. Susan Levine ("Dr. Levine"). (Id.) Plaintiff consulted with Dr. Levine, and she diagnosed him with CFS and prescribed a treatment regimen of medications and vitamin injections. (Id.; Hachtel Dep. at 112, 114–5). Despite this treatment, Plaintiff's symptoms continued to increase in severity and on November 14, 1994, Plaintiff ceased working. (Montas Aff., Exh. A at 2; Hachtel Aff. at 77, 79–82, 126–7).

On November 17, 1994, Plaintiff was evaluated at an HMO medical center by his own doctor, psychiatrist Dr. Deborah Pfeffer ("Dr. Pfeffer"). (Defs. 3rd Amend. Rule 56.1 Statement at ¶ 31; Bonner Aff. Exh. C). Dr. Pfeffer ruled out depression as the cause of Plaintiff's symptoms and found that Plaintiff had CFS and Adjustment Disorder mixed with "emotional feelings." (Id.)

Plaintiff notified Aetna of his condition and his absence from work, indicating that

he would first exhaust his sick days, then his vacation days, as required by the Short Term Disability Plan ("STD Plan") and the LTD Plan. The LTD Plan provides benefits to disabled employees beginning on the 181st day of disability, after the employee has received coverage under the STD Plan. Under the LTD Plan, "disability" is defined, in pertinent part, as:

a mental or physical condition which the Claims Administrator/Fiduciary determines: (i) prevents the Participant from performing each and every material duty pertaining to his or her regular occupation (and after 24 consecutive months of such condition prevents the Participant from engaging in each and every occupation or employment for wage or profit for which Employee is reasonably qualified by reason of education, training or experience or may reasonably become qualified)

(Green Aff., Exh. A, "LTD Plan").

Likewise, the LTD Plan provides that a Claims Administrator/ Fiduciary may require the employee to undergo an independent medical examination ("IME") by a doctor designated by the LTD Plan. (*Id.*)

Aetna made a decision to deny certification of Plaintiff's disability pending an IME by a specialist in infectious diseases. (Defs. 3rd Amend. Rule 56.1 Statement at ¶¶ 26–7). Plaintiff underwent the IME in December 1994. (*Id.* at 27; Bonner Aff., Exh. B). Dr. Arthur Klein ("Dr. Klein"), who performed the IME, disagreed with the diagnosis of CFS, but found Plaintiff was disabled due to depression and headaches, secondary to chronic sinusitis. (*Id.* at 28). Dr. Klein then recommended that Aetna certify Plaintiff's disability pending evaluation by a neurologist and psychologist. (*Id.* at 29). Following this evaluation, Aetna informed Plaintiff that it would certify his disability until January 16, 1995. (Montas Aff., Exh. A at 4).

In February 1995, pursuant to Aetna's instructions, Plaintiff was seen by a neurologist, Dr. Kristina Dahl ("Dr. Dahl"), who diagnosed Plaintiff again with CFS as well as symptoms associated with depression. (Bonner Aff., Exh. D). Dr. Dahl indicated that Plaintiff remained disabled due to his physical and cognitive disabilities. (*Id.*) The claim file contains notes from Aetna's Medical Director, Dr. Joseph Pascuzzo ("Dr. Pascuzzo"), which stated that no significant physical findings were noted in Dr. Dahl's report. (Defs. 3rd Amend. Rule 56.1 Statement at ¶ 34). Further, the cognitive defect could be on a medical or a psychiatric level. (*Id.*) Aetna notified Plaintiff that it would continue to certify his disability through March 3, 1995. (*Id.* at ¶ 33).

On April 12, 1995, however, Aetna declined to certify additional disability time for Plaintiff until he underwent additional testing. (*Id.* at ¶ 45). Pursuant to this requirement, Plaintiff met with an Aetna rehabilitation nurse, Arlene Mackey ("Nurse Mackey"), so she could perform a Functional Capacity Evaluation ("FCE"). (Montas Aff., Exh. A at 7). Plaintiff, however, was too weak to perform the FCE and Nurse Mackey relayed to Aetna that Plaintiff was not capable of work due to his disability. (*Id.*) Aetna then scheduled a medical examination for Plaintiff with a neuropsychologist, Dr. Avraham Calev ("Dr. Calev"), in May 1995. (Bonner Aff., Exh. E). Dr. Calev also found that Plaintiff suffered from CFS and depression, although he made no finding with regard to Plaintiff's disability. (*Id.*)

Plaintiff's entire file was then reviewed by one of Aetna's in-house physicians, Dr. David Erickson ("Dr. Erickson"), who recommended that Aetna certify the disability. (Montas Aff., Exh. A at 10–11). Aetna suggested that Plaintiff begin rehabilitation on June 16, 1995. (Defs. 3rd Amend.

Rule 56.1 Statement at ¶ 46). Plaintiff began such rehabilitation three times per week, and Aetna again extended its certification until August 31, 1995. Plaintiff continued his rehabilitation, and Dr. Pascuzzo once again certified Plaintiff's disability until the end of September, 1995. (Defs. 3rd Amend. Rule 56.1 Statement at ¶ 50).

In a series of reports from August 22 to September 20, 1995, the physical therapist reported that Hachtel had increased his endurance, had responded well to weight training, had more energy, was better able to sleep, had increased his strength, and had reported a decrease in fatigue and dizziness. (Defs. 3rd Amend. Rule 56.1 Statement at ¶¶ 51–55). On September 27, 1995, after reviewing the claim file, Dr. Pascuzzo recommended that Plaintiff's disability should not be certified beyond September 30, 1995. (*Id.* at 56). He also ordered an IME of Plaintiff by Dr. Philip Su ("Dr. Su"), an independent board-certified neurologist. (*Id.*) On October 25, 1995, Dr. Su performed a medical examination and determined that Plaintiff was not disabled. (*Id.* at 64; Bonner Aff., Exh. F). On the basis of Dr. Su's examination of Plaintiff, Dr. Pascuzzo determined on November 7, 1995 that Plaintiff was no longer disabled under the definition of the LTD Plan and terminated Plaintiff's LTD benefits as of September 30, 1995. (Defs. 3rd Amend. Rule 56.1 Statement at ¶ 67).

On December 7, 1995, Plaintiff (through counsel) requested a review of Aetna's denial of benefits. (Bonner Aff., Exh. H). Aetna Medical Director, Dr. Matthew Kasprenski ("Dr. Kasprenski") reviewed the appeal. Dr. Kasprenski determined: "It is clear based on the IME evaluation that there was no objective evidence of disability both from the physical and psych standpoint. In fact, part of the therapy for CFS is to return the patient to work as soon as possible." (Defs. 3rd Amend.

Rule 56.1 Statement at ¶ 73; Bonner Aff., Ex. A.) In a letter dated February 9, 1996, Aetna informed Hachtel's counsel that Plaintiff's denial of benefits was upheld. (*Id.* at ¶ 74).

At Plaintiff's request, Aetna considered the following additional information submitted by Plaintiff's attorneys in November 1996: a report from Dr. Levine, a Neuropsychological Evaluation by Dr. Calev, a report by Dr. Dahl, and a Tilt Table Lab Report by Dr. Daniel Bloomfield. (Defs. 3rd Amend. Rule 56.1 Statement at ¶ 76). The Tilt Table Report showed "vasodepressor syncope," which is a "markedly positive" result. (Pl. 2nd Amend. Rule 56.1 Statement at ¶ 63; Bonner Aff., Exh. J). A third Aetna Medical Director, Dr. Robert Bonner ("Dr. Bonner") was referred Hachtel's file in January 1997. (Defs. 3rd Amend. Rule 56.1 Statement at ¶ 77). Plaintiff's counsel submitted an additional letter from Dr. Levine on January 27, 1997. Aetna then reviewed the entire file and on April 21, 1997, issued a final determination to uphold the denial of Plaintiff's benefits under the LTD Plan. (*Id.* at ¶ 81).

## B. Procedural Background

Plaintiff filed suit on August 24, 1998, seeking recovery of benefits to which he alleges he is entitled pursuant to the LTD and Non–LTD Plans. On August 21, 2001, this Court denied Defendants' first motion for summary judgment because the depositions of several evaluating physicians had not yet been completed.

Upon conducting additional discovery, Defendants filed a second motion for summary judgment, and Plaintiff filed a cross-motion for summary judgment. The Court heard oral argument on these second motions on January 24, 2003, but both motions were withdrawn, without prejudice to renew, because Plaintiff had not yet

had the opportunity to depose Dr. Su. The instant motions are a renewal of the second motions, and both parties have submitted supplemental briefs as well as a transcript from Dr. Su's deposition.

## DISCUSSION

### A. Standard for Summary Judgment

A motion for summary judgment may not be granted unless the court determines that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Castle Rock Entm't, Inc. v. Carol Publ'g Group,* 150 F.3d 132, 137 (2d Cir.1998). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

### B. The Employment Retirement Income Security Act (ERISA)

■ Where an ERISA plan grants an administrator discretionary authority to determine eligibility for benefits, as is the case here, the standard of judicial review is deferential and limited in scope. *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir.1995). Courts must not "disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 441 (2d Cir. 1995); *see also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). "Under the arbitrary and capricious standard of review, [a Court] may overturn a decision to deny benefits only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law' ... [t]his scope of review is narrow, thus [Courts] are not free to substitute [their] own judgment for that of the [administrator] as if [they] were considering the issue of eligibility anew." *Pagan,* 52 F.3d at 442 (citations omitted). Courts have found that the "substantial evidence" needed to support an administrator's decision to deny benefits means "evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decision maker and] ... requires more than a scintilla but less than a preponderance." *Miller v. United Welfare Fund,* 72 F.3d 1066, 1072 (2d Cir.1995) (citation omitted).

■ In determining whether Defendants were "arbitrary and capricious" in their termination of Plaintiff's benefits, this Court may only look at the facts and information presented to Aetna, the plan administrator, at the time of Aetna's review. *Miller,* 72 F.3d at 1071. To aid in this determination, listed below is the assessment by the relevant physicians and experts of Plaintiff's medical condition:

| PHYSICIAN | DIAGNOSIS |
| --- | --- |
| Dr. Levine (Specialist chosen by Plaintiff) | 10/94—CFS; regimen of medications/vitamins |
| Dr. Pfeffer (Plaintiff's own physician) | 11/94—CFS and adjustment disorder; ruled out depression |
| Dr. Klein (IME) | 12/94—No CFS; found Plaintiff *was* disabled due to depression and headaches; recommended evaluation by neurologist and psychologist |

| | |
|---|---|
| Dr. Dahl (Independent neurologist, referred by Dr. Levine) | 2/95—CFS and other symptoms associated with depression; found Plaintiff was disabled. |
| Nurse Mackey (Retained by Aetna to administer Functional Capacity Evaluation) | 3/95—Plaintiff was not capable of work due to his disability |
| Dr. Calev (Aetna neuropsychologist) | 5/95—CFS and depression; did not address disability; "Good chance [Hachtel's symptoms] will greatly improve with treatment." |
| Dr. Erickson (Aetna in-house physician) | 6/95—Reviewed Plaintiff's report; found physical deterioration, depression; recommended Aetna certify the disability |
| Physical therapist | 8/95 to 9/95—Reported increased strength, endurance, and energy. |
| Dr. Su (IME) | 10/95—No CFS; found Plaintiff was no longer disabled. |

## C. The LTD Plan

■ The issue this Court must determine is whether Aetna's decision to terminate Hachtel's LTD benefits was arbitrary and capricious. Aetna argues that it was presented with conflicting and often contradictory medical evidence regarding the nature of Hachtel's condition and the extent of his incapacity to work. In addition, much of this medical evidence was based on Hachtel's self-reported subjective symptoms. Further, once Plaintiff's disability benefits were denied, three Aetna Medical Directors (Drs. Pascuzzo, Kasprenski and Bonner) reviewed the entire claim file on appeal and separately concluded that after September 30, 1995, Hachtel was not disabled based on Dr. Su's exam and report, and the findings of the physical therapist detailing Plaintiff's improvement.

Plaintiff, however, asserts that there was overwhelming medical evidence supporting the granting of his LTD benefits. Plaintiff highlights the fact that *all but one of the doctors who personally met with and examined Plaintiff found he was disabled.* (*See* Chart, *supra* at 319–20). Drs. Levine, Pfeffer, and Dahl all found that Plaintiff was disabled due to CFS. Dr. Klein, although not diagnosing Plaintiff with CFS, found he was disabled due to depression. Dr. Erickson, in reviewing Plaintiff's report, recommended Aetna certify Plaintiff's disability. Dr. Calev diagnosed Plaintiff with CFS, but made no finding regarding his disability. Dr. Su, however, was the only doctor who personally examined Plaintiff and did not find him to be disabled.

Taking into account both Defendants' and Plaintiff's arguments, there are conflicting issues of material fact which preclude summary judgment. Namely, in light of the unanimity of findings by Plaintiff's and Aetna's physicians that Plaintiff was disabled within the meaning of the LTD Plan (whether due to CFS, depression or both), whether Dr. Su's report and exam, in conjunction with the physical therapist's status reports detailing Plaintiff's improvement, provide "substantial evidence" upon which to deny Plaintiff's LTD benefits.

First, although Dr. Su is a board-certified neurologist, his exam of Plaintiff appears to have been cursory and much less comprehensive and thorough then the reports of Drs. Dahl and Calev. For example, Dr. Su stated in his report that Plaintiff had "no impairment in his cognitive function," but subsequently admitted in his deposition that the "mini mental status exam" he performed on Plaintiff was not sufficient to definitely rule out the exis-

tence of cognitive deficits. (Su Dep. at 69). Second, although the physical therapist's status reports state that Plaintiff was improving, the improvement was moderate, and the reports and notes reveal that Plaintiff continued to complain of and experience symptoms such as fatigue, dizziness and minimal functional capacity. (Montas Aff., Exh. B). Accordingly, questions of fact remain which warrant a hearing before this Court, and therefore, summary judgment is inappropriate.

Defendants' argue, however, that the facts in the instant case are analogous to the facts in *Bressmer v. Federal Express Corp. Long Term Disability Plan,* No. 98–4508, 1999 U.S. Dist. LEXIS 20708 (E.D.N.Y.1999) (Platt, J.), wherein this Court found that the plan administrator was entitled to summary judgment. In *Bressmer,* however, the plaintiff underwent a "battery of examinations" which revealed that she was not totally disabled and a "plethora of experts" agreed. *Id.* at *3, *10. Further, there were "conflicting assessments" between plaintiff's and defendant's physicians as to whether plaintiff was actually disabled. *Id.* at *7–*12.

Here, there was no "battery of examinations" or "plethora of experts" supporting Aetna's determination that Plaintiff was not disabled. To the contrary, apart from Dr. Su's cursory IME and some physical therapy reports, a majority of doctors, both Plaintiff's and Aetna's, found that Plaintiff was disabled. In addition, although there were conflicts between Plaintiff's doctors as to whether he was suffering from CFS, depression or some combination of the two, there was never any conflict as to whether Plaintiff was, in fact, disabled within the meaning of the LTD Plan. In that respect, a majority of doctors, both Plaintiff's and Aetna's, found a disability. Accordingly, this Court's decision in *Bressmer* is inapplicable to the instant action and summary judgment is denied for both parties.

## CONCLUSION

For the foregoing reasons, both Defendants' and Plaintiff's motions are hereby **DENIED.**

SO ORDERED.